Nos. 22-3232 & 23-1405

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

UNITED STATES OF AMERICA

v.

SOULEYMANE DIARRA and MALAN DOUMBIA
Appellants.

---

On Appeal from Judgments in the
United States District Court for the Eastern District of Pennsylvania
No. 2:19-cr-00392 (Beetlestone, J.)

---

**JOINT APPENDIX**
**Volume 1 (Appx.0001-0036)**

---

Gina A. Amoriello
Law Office Of Gina A. Amoriello
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-389-3090
gamorielloesq@gmail.com

*Attorney for Appellant*
*Malan Doumbia*

Lisa A. Mathewson
Mathewson Law LLC
123 South Broad Street, Suite 1320
Philadelphia, PA 19109
215-399-9592
lam@mathewson-law.com

*Attorney for Appellant*
*Souleymane Diarra*

# TABLE OF CONTENTS

## Appendix Volume 1
**(pp. 0001-0036)**

Notice of Appeal by Souleymane Diarra – DDE 130 (filed 11/23/22)........... 0001

Notice of Appeal by Malan Doumbia – DDE 145 (filed 3/5/23)........................ 0002

Judgment, Souleymane Diarra – DDE 126 (dated 11/9/22, entered 11/10/22)........................................................................................ 0003

Judgment, Malan Doumbia – DDE 144 (entered 2/23/23) ................................ 0011

Opinion and Order denying post-trial motions – DDE 110, DDE 111 (entered 8/12/22)........................................................................................ 0021

## Appendix Volume 2
**(pp.0037-0434)**

District Court Docket (accessed 10/3/23) ............................................................ 0037

Indictment – DDE 1 (filed 7/10/19)........................................................................ 0057

Trial Transcript Day 1 – 2/22/22............................................................................ 0080

Trial Transcript Day 2 – 2/23/22............................................................................ 0149

**<u>Appendix Volume 3</u>**
**(pp.0435-0910)**


Trial Transcript Day 3 – 2/24/22 .......... 0435

Trial Transcript Day 4 – 2/25/22 .......... 0619

Jury Verdict Form – DDE 72 (2/25/22) .......... 0765

Selected Trial Exhibits:
- GX 23 .......... 0770
- GX 26 .......... 0772
- GX 33 .......... 0774
- GX 41 .......... 0776

Transcript of sentencing hearing, Diarra, 11/9/22 .......... 0782

Transcript of sentencing hearing, Doumbia, 2/22/23 .......... 0862

Certificate of Service .......... attached

RECD NOV 23

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**UNITED STATES OF AMERICA :**

**v. : Criminal No. 19-393**

**:**

**SOULEYMANE DIARRA :**

---

# NOTICE OF APPEAL

Notice is hereby given defendant, Souleymane Diarra, hereby appeals to the United States Court of Appeals for the Third Circuit from the Judgment Order entered in this action on November 10, 2022.

SDiarra
Souleymane Diarra (pro se)

Dated: November 23, 2022

140 BURNSIDE STREET PHILADELPHIA
PA 19127

**UNITED STATES DISTRICT COURT**
EASTERN **DISTRICT OF** PENNSYLVANIA

UNITED STATES OF AMERICA, : DOCKET # 19-CR-392

v. :

MALAN DOUMBIA, :
Defendant. :

**NOTICE OF APPEAL**
**TO**
**U.S. COURT OF APPEALS THIRD CIRCUIT**

Notice hereby is given that the above-named defendant appeals to the United States Court of Appeals for the Third Circuit from

- (●) JUDGMENT
- ( ) ORDER
- ( ) OTHER (Specify):

of the above United States District Court entered in this action on February 22, 2023 .

*/s/ Gina A. Amoriello*

GINA A. AMORIELLO, ESQUIRE
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 389-3090
Attorney for Defendant/Appellant

Dated: March 5, 2023

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

UNITED STATES OF AMERICA
v.
SOULEYMANE DIARRA

## JUDGMENT IN A CRIMINAL CASE

Case Number: DPAE2:19CR00392-002

USM Number: 77368-066

Hope LeFeber, Esquire
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) __________

☐ pleaded nolo contendere to count(s) __________ which was accepted by the court.

☑ was found guilty on count(s) 1 - 9 after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit wire fraud | 7/10/2019 | 1 |
| 18 U.S.C.§§1029(a)(1) & 2 | Counterfeit access device fraud and aiding and abetting | 7/10/2019 | 2 |
| 18 U.S.C §§1029(a)(4) & 2 | Counterfeit access device fraud and aiding and abetting | 7/10/2019 | 3 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) __________

☐ Count(s) __________ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

11/9/2022
Date of Imposition of Judgment

[signature]
Signature of Judge

Wendy Beetlestone, United States District Judge
Name and Title of Judge

11/09/2022
Date

DEFENDANT: SOULEYMANE DIARRA
CASE NUMBER: DPAE2:19CR00392-002

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C.§§1028A(a)(1) & | (c)(5) & 2 Aggravated identity theft and aiding and abetting | 7/10/2019 | 4-8 |
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering | 7/10/2019 | 9 |

DEFENDANT: SOULEYMANE DIARRA
CASE NUMBER: DPAE2:19CR00392-002

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

37 months on each of Counts 1, 2, 3, and 9, to be served concurrently, and a term of 24 months on each of Counts 4, 5, 6, 7, and 8, to be served concurrently to each other but consecutively to the terms imposed on Counts 1, 2, 3, and 9, to produce a total term of 61 months of imprisonment.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ______________ ☐ a.m. ☐ p.m. on ______________ .

☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☑ before 2 p.m. on 1/9/2023 .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ______________ to ______________

at ______________ , with a certified copy of this judgment.

______________
UNITED STATES MARSHAL

By ______________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: SOULEYMANE DIARRA
CASE NUMBER: DPAE2:19CR00392-002

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 years on each of Counts 1, 2, 3, and 9 and a term of 1 year on each of Counts 4, 5, 6, 7, and 8, such terms to run concurrently.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: SOULEYMANE DIARRA
CASE NUMBER: DPAE2:19CR00392-002

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________________ Date ______________

DEFENDANT: SOULEYMANE DIARRA
CASE NUMBER: DPAE2:19CR00392-002

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall cooperate with Immigration and Customs Enforcement to resolve any problems with the defendant's status in the United States. The defendant shall provide truthful information and abide by the rules and regulations of the Bureau of Immigration and Customs Enforcement. If deported, the defendant shall not re-enter the United States without the written permission of the Attorney General. If the defendant re-enters the United States, the defendant shall report in person to the nearest U.S. Probation Office within 48 hours.

The defendant shall refrain from all gambling activities, legal or otherwise. The defendant is to attend Gamblers Anonymous, or similar treatment, and remain in treatment until satisfactorily discharged. The defendant shall provide the U.S. Probation Office with full disclosure of his financial records to include yearly income tax returns upon the request of the U.S. Probation Office.

The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income. The defendant is prohibited from incurring any new credit charges or opening additional lines of credit without the approval of the probation officer, unless the defendant is in compliance with a payment schedule for any restitution obligation. The defendant shall not encumber or liquidate interest in any assets unless it is in direct service of the restitution obligation or otherwise has the express approval of the Court.

Restitution payments should be made payable to Clerk, U.S. District Court, for proportionate distribution to the victims (which are the banks set forth in the pre-sentence investigation report ). The amount ordered represents the total amount due to the victims for this loss. The defendant's restitution obligation shall not be affected by any restitution payments made by other defendants in this case, except that no further payments shall be required after the sum of the amounts actually paid by all defendants has fully satisfied this loss. The following defendants in the following cases may be subject to restitution orders to the same victim for this same loss of $60,262.70.

Malan Doumbia Dkt. 0313 2:19CR00392-001
Souleymane Jarrow Dkt. 0313 2:19CR00392-003

The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing address or residence that occurs while any portion of the restitution remains unpaid.

DEFENDANT: SOULEYMANE DIARRA
CASE NUMBER: DPAE2:19CR00392-002

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 900.00 | $ 60,261.70 | $ | $ | $ |

☐ The determination of restitution is deferred until __________. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| American Express | $24,173.93 | $24,173.93 | 100% |
| Key Bank | $2,165.04 | $2,164.04 | 100% |
| Morgan Stanley | $5,672.26 | $5,672.26 | 100% |
| Reliance Bank | $14,861.58 | $14,861.58 | 100% |
| US Bank | $13,389.89 | $13,389.89 | 100% |
| **TOTALS** | $ 60,262.70 | $ 60,261.70 | |

☐ Restitution amount ordered pursuant to plea agreement $ __________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☑ the interest requirement is waived for the ☐ fine ☑ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: SOULEYMANE DIARRA
CASE NUMBER: DPAE2:19CR00392-002

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ 900.00 due immediately, balance due

☐ not later than ____________, or
☑ in accordance with ☐ C, ☐ D, ☐ E, or ☑ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within ________ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:
The restitution and special assessment are due immediately. It is recommended that the defendant participate in the Bureau of Prisons Inmate Financial Responsibility Program and provide a minimum payment of $25 per quarter towards the restitution and special assessment. In the event the restitution and special assessment are not paid prior to the commencement of supervision, the defendant shall satisfy the amounts due in monthly installments of not less than $150, to commence 30 days after release from confinement.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| Malan Doumbia, 2:19CR00392-001 | | | |
| Souleymane Jarrow, 2:19CR00392-003 | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

UNITED STATES OF AMERICA
v.
Malan Doumbia
a/k/a "Frenchie"

## JUDGMENT IN A CRIMINAL CASE

Case Number: DPAE2:19CR000392-001

USM Number: 77372-066

Gina A. Amoriello, Esq
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) ______

☐ pleaded nolo contendere to count(s) ______ which was accepted by the court.

☑ was found guilty on count(s) Counts 1 through 9 of the Indictment after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit wire fraud | | 1 |
| 18 U.S.C. §§ 1029(a)(1) and 2 | Counterfeit access device fraud and aiding and abetting | | 2 |
| 18 U.S.C. §§ 1029(a)(4) and 2 | Counterfeit access device fraud and aiding and abetting | | 3 |

The defendant is sentenced as provided in pages 2 through 10 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) ______

☐ Count(s) ______ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/22/2023
Date of Imposition of Judgment

/s/ Wendy Beetlestone
Signature of Judge

Wendy Beetlestone, U.S. District Court Judge
Name and Title of Judge

2/23/2023
Date

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 1A



DEFENDANT: Malan Doumbia a/k/a "Frenchie"
CASE NUMBER: DPAE2:19CR000392-001

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1028A(a)(1) and (c)(5) and 2 | Aggravated identity theft and aiding and abetting | | 4-8 |
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering | | 9 |

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment



DEFENDANT: Malan Doumbia a/k/a “Frenchie”
CASE NUMBER: DPAE2:19CR000392-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
86 months. 62 months of imprisonment on Counts 1,2,3 and 9, to be served concurrently, and a term of 24 months on each of Counts 4,5,6,7 and 8, to be served concurrently to each other, but consecutively to the terms imposed on Counts 1,2,3 and 9.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☑ The defendant shall surrender to the United States Marshal for this district:

☑ at ____________ ☐ a.m. ☐ p.m. on 4/24/2023 .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on ____________ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on ____________ to ____________

at ____________ , with a certified copy of this judgment.

____________
UNITED STATES MARSHAL

By ____________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: Malan Doumbia a/k/a "Frenchie"
CASE NUMBER: DPAE2:19CR000392-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 years. 3 years on Counts 1,2,3 and 9 and a term of 1 year on Counts 4,5,6,7 and 8, all terms to run concurrently.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: Malan Doumbia a/k/a "Frenchie"
CASE NUMBER: DPAE2:19CR000392-001

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________ Date ____________

DEFENDANT: Malan Doumbia a/k/a "Frenchie"
CASE NUMBER: DPAE2:19CR000392-001

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall cooperate with Immigration and Customs Enforcement to resolve any problems with the defendant's status in the United States. The defendant shall provide truthful information and abide by the rules and regulations of the Bureau of Immigration and Customs Enforcement. If deported, the defendant shall not re-enter the United States without the written permission of the Attorney General. If the defendant re-enters the United States, the defendant shall report in person to the nearest U.S. Probation Office within 48 hours.

The defendant shall refrain from all gambling activities, legal or otherwise. The defendant is to attend Gamblers Anonymous, or similar treatment, and remain in treatment until satisfactorily discharged.

The defendant shall provide the U.S. Probation Office with full disclosure of his financial records to include yearly income tax returns upon the request of the U.S. Probation Office. The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income.

The defendant is prohibited from incurring any new credit charges or opening additional lines of credit without the approval of the probation officer, unless the defendant is in compliance with a payment schedule for any fine or restitution obligation. The defendant shall not encumber or liquidate interest in any assets unless it is in direct service of the fine or restitution obligation or otherwise has the express approval of the Court.

DEFENDANT: Malan Doumbia a/k/a “Frenchie”
CASE NUMBER: DPAE2:19CR000392-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 900.00 | $ 60,262.70 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until ____________. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| American Express | $24,173.93 | $24,173.93 | 100 |
| Key Bank | $2,165.04 | $2,165.04 | 100 |
| Morgan Stanley | $5,672.26 | $5,672.26 | 100 |
| **TOTALS** | $ 60,262.70 | $ 60,262.70 | |

☐ Restitution amount ordered pursuant to plea agreement $ ____________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☑ the interest requirement is waived for the ☐ fine ☑ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: Malan Doumbia a/k/a “Frenchie”
CASE NUMBER: DPAE2:19CR000392-001

# ADDITIONAL RESTITUTION PAYEES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Reliance Bank | $14,861.58 | $14,861.58 | 100 |
| US Bank | $13,389.89 | $13,389.89 | 100 |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: Malan Doumbia a/k/a "Frenchie"
CASE NUMBER: DPAE2:19CR000392-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ 61,162.70 due immediately, balance due

☐ not later than ____________, or
☑ in accordance with ☐ C, ☐ D, ☐ E, or ☑ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal ________ *(e.g., weekly, monthly, quarterly)* installments of $ ________ over a period of ________ *(e.g., months or years)*, to commence ________ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within ________ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:
The restitution and special assessment are due immediately. It is recommended that the defendant participate in the Bureau of Prisons Inmate Financial Responsibility Program and provide a minimum payment of $25 per quarter towards the restitution and special assessment. In the event the restitution and special assessment are not paid prior to the commencement of supervision, the defendant shall satisfy the amounts due in monthly installments of not less than $150, to commence 30 days after release from confinement.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☑ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| Souleymane Diarra<br>E.D. of PA 2:19CR000392-002 | 60,262.79 | 60,262.70 | see page 7 & 8 |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
two iPhones, one Samsung flip phone, multiple re-encoded bank cards, blank card stock, loaded gift cards, two laptop computers,

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

DEFENDANT: Malan Doumbia a/k/a "Frenchie"
CASE NUMBER: DPAE2:19CR000392-001

## ADDITIONAL DEFENDANTS AND CO-DEFENDANTS HELD JOINT AND SEVERAL

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| Souleymane Jarrow<br>E.D. of Pa - 2:19CR000392-003 | $60,262.27 | $60,262.70 | see page 7 & 8 |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | v |
| **v.** | : | **CRIMINAL ACTION NO. 19-392** |
| | : | |
| **MALAN DOUMBIA, *et. al.*** | : | |

**<u>MEMORANDUM OPINION</u>**

After a week-long trial, a jury convicted defendants Malan Doumbia and Souleymane Diarra ("Defendants") on all counts of a nine-count indictment which charged them with various fraud, aggravated identity theft, and money laundering offenses. Defendants now move under Federal Rule of Criminal Procedure 29 for a judgment of acquittal. For the reasons that follow, Defendants' motions will be denied.

## I. BACKGROUND

As alleged in the indictment, Defendants, along with a fugitive co-conspirator, Souleyman Jallow, carried out a complex credit/debit card fraud scheme from 2012 to 2019. As part of the scheme, Defendants allegedly purchased thousands of stolen credit/debit numbers from darknet websites overseas, and then attempted to withdraw funds from those accounts. In March 2015, following an investigation, United States Secret Service ("USSS") agents executed search warrants at Defendants' residences in Philadelphia. During that search, agents seized the following: card encoding machines; re-encoded cards; blank card stock; and, computers and phones which contained thousands of stolen debit/credit card numbers. Defendants were charged, and ultimately found guilty of: (1) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; (2) counterfeit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(1) and 2; (3) possession of device-making equipment, in violation of 18 U.S.C. §§1029(a)(4) and 2; (4)

aggravated identity theft, in violation of 18 U.S.C. §§ 1028(a)(1), (c)(5), and 2; and, (4) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h), (a)(2)(B)(i) and (a)(2)(A).

During trial, the Government presented the jury with a large swath of evidence. The evidence included, *inter alia*, transcripts of wiretapped conversations between confidential informants and defendants; photos of blank cards and card-making devices found in Defendants' homes; and, the testimony of multiple witnesses involved in the investigation. These witnesses included: (1) Confidential Informant 2 ("CI2"); (2) USSS Special Agent Malaika Crowe; (3) USSS forensic computer agent Bryan Deyoung; and, (4) Department of Homeland Security agent Michael Johnson. The parties also stipulated to a number of facts regarding what certain victims of Defendants' conduct would have testified to regarding their stolen information. Defendant Diarra moves for acquittal on all counts; Defendant Doumbia moves for acquittal only on the conspiracy to commit wire fraud count and the aggravated identity theft counts.

## II. STANDARD OF REVIEW

Under Rule 29 of the Federal Rules of Criminal Procedure, a judgment of acquittal must be entered for "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Evidence is insufficient if no "rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). This standard is "highly deferential" to the findings of the jury. *Id.* Review under Rule 29 requires consideration of the entire record—not just pieces of evidence in isolation—in the light most favorable to the prosecution. *Id.* Courts "must be ever vigilant not to usurp the role of the jury by weighing credibility and assigning weight to the evidence." *Id.* (citation omitted) (cleaned up). And to avoid "act[ing] as a thirteenth juror," a

verdict may only be overturned if it "falls below the threshold of bare rationality," *id*. at 431, or "where the prosecution's failure is clear." *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984) (citation omitted). Proving that this standard requires a verdict be overturned is "a very heavy burden." *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997) (citation omitted).

## III. DISCUSSION

### A. Count I: Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349

Both Defendants move for acquittal as to the wire fraud conspiracy count under 18 U.S.C. § 1349 which provides as follows: "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The statute does not require proof of an overt act. *See United States v. Obaygbona*, 556 F. App'x 161 (3d Cir. 2014). Thus, to establish a violation of 18 U.S.C. § 1349, the Government must have proven the following elements beyond a reasonable doubt: (1) that two or more people agreed to commit wire fraud; (2) that Defendants were members of that agreement; and, (3) that Defendants shared a unity of purpose and the intent to achieve a common goal. *United States v. Rankin*, 870 F.2d 109, 113 (3d Cir. 1989).

A conspiracy can be proven by direct or circumstantial evidence. *Brodie*, 403 F.3d at 134. Its existence can be inferred from evidence of related facts and circumstances "from which it appears, as a reasonable and logical inference, that the activities of the participants could not have been carried on except as a result of a preconceived scheme or common understanding." *Id.* (citation omitted). Inferences drawn, however, cannot be based on "speculation." *United States v. Thomas*, 114 F.3d 403, 406 (3d Cir. 1997); *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010). In reviewing a motion under Rule 29, a court faced with conflicting inferences "must presume—even if it does not affirmatively appear in the record—that the trier of fact

resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (citation and quotation marks omitted).

Diarra and Doumbia first argue that the evidence presented by the Government at trial is insufficient to sustain a conviction because "the Government presented no evidence" to establish that Diarra and Doumbia even know one another, such as a "telephone conversation, [or] text" between the two. However, at trial, the Government established through testimony and other evidence that Defendants went by aliases: Diarra was also known as "Vieux," "V," and "Mike," while Doumbia was known as "Frenchie." The Government then showed that "V" and Doumbia communicated with one another through multiple means. For example, the Government presented photos of Doumbia's phone, which phone displayed multiple messages on WhatsApp from a sender named "V." The messages include numerous credit card numbers from Cathay Bank Taiwan. Doumbia responded with additional numbers and also wrote, "celui-là est bon," which in French means "this one's good." Other exhibits showed that Doumbia and "V" exchanged links to conversations through an app called "Privnote" which sends notes that self-destruct after being sent. And another exchange on August 13, 2018, showed that "V" sent Doumbia a text message of credit card information from China Merchants Bank.

This evidence, taken as a whole, establishes that Diarra and Doumbia knew one another and worked together to share credit card numbers with each other that were not their own. This alone establishes the elements of a conspiracy, *i.e.*, that Defendants knowingly agreed and worked together to achieve the common goal of illegally exchanging credit card numbers.

But even if one were to overlook the above evidence, as Defendants do in their motions, the Government was not legally required to show evidence of direct communication between Diarra and Doumbia. The Government was permitted to present circumstantial evidence of the conspiracy, which it did. For example, CI2 testified at trial that prior to his arrest, he was

involved in the credit card fraud business, and that he knew Diarra through that business. CI2 further testified that Diarra worked with a man named Malan Doumbia, who also went by "Frenchie." CI2 stated that Diarra told him about working with Doumbia, and that "[Diarra] trust[ed] Frenchie," enough to provide Doumbia with fake credit cards which he would use to withdraw cash from banks. The Government also presented transcripts of wiretapped conversations between CI2 and Diarra during which Diarra confirmed that "the French guy's [credit card] numbers really work" and that he knew specific details about how Doumbia conducted his work, including: that Doumbia had a manual device with which to make credit cards; that Doumbia eventually lost that device; and, that when Doumbia received the credit card numbers, "he d[id] not use [them] on the spot. He [waited] for about six month[s] before using them so [the FBI] don't trace them [sic] and know their origin."

Defendants do not address the Government's evidence in their Reply. Instead, they argue that the Government improperly relied on evidence from CI2 to establish the existence of a conspiracy and that "the law does not permit [the finding of] a conspiracy with a Government informant." But the Government's objective at trial was not to show the existence of a conspiracy between CI2 and the Defendants, but rather between Defendants themselves through CI2's testimony and recorded conversations. The Government did present evidence on this theory, and it was rational for the jury to agree with the Government that Defendants were guilty beyond a reasonable doubt of carrying out a conspiracy. Defendants' motions will therefore be denied as to the conspiracy to commit wire fraud count.

### B. Count II: Counterfeit Access Device Fraud, 18 U.S.C. § 1029(a)(1) and 2

Diarra next moves for acquittal on the Counterfeit Access Device Fraud Count. 18 U.S.C. § 1029(a)(1). To prove a violation of Section 1029(a)(1), the Government must have proven: (1) that the defendant knowingly and with intent to defraud; (2) produced, trafficked in,

had custody or control of, or possessed; (3) one or more counterfeit access devices. 18 U.S.C. § 1029(a)(1). Section 1029(e)(1) of defines the term "access device" as follows:

> [A]ny card, plate, code, account number electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier , or other means of account access *that can be used alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value*, or that can be used to initiate a transfer of funds (other than can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).[1]

18 U.S.C. § 1029(a)(1) (emphasis added). Diarra argues that he is entitled to acquittal on this count because in his view, the Government did not introduce any evidence that the cards found in his possession could "be used . . . to obtain money, goods, services, or any other thing of value," *i.e.,* were actually functional when found. Diarra cites to *United States v. Onyesoh*, 674 F.3d 1157 (9th Cir. 2012) for his understanding of this "usability" requirement. There, the Court concluded that a reading of the statute required the Government to show that the cards at issue could at that moment be used to obtain money. *Id.* at 1160.

In response, the Government notes that all other circuits which have considered the meaning of "access device" have rejected the Ninth Circuit's reading of the term. *See, e.g., United States v. Carver,* 916 F.3d 398, 402 (4th Cir. 2019); *United States v. Moon*, 808 F.3d 1085, 1092 (6th Cir. 2015) (rejecting *Onyesoh* "usability" requirement); *United States v. Moore*, 788 F.3d 693, 695 (7th Cir. 2015); *United States v. Cardenas*, 598 F. App'x 264, 267 (5th Cir. 2015); *United States v. Bermudez*, 536 Fed. App'x 869, 871 (11th Cir. 2013); *United States v. Heath*, 424 F. App'x 730, 736-37 (10th Cir. 2011); *United States v. Volynskiy*, 431 F. App'x 8, 9-10 (2d Cir. 2011). In rejecting *Onyesoh*, these courts often turn to the statute's definition of

---

[1] A "counterfeit access device," in turn, means "any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device." 18 U.S.C. § 1029(e)(2).

the term "unauthorized access device." That term is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3). The courts then note that if "access device" were only to encompass "usable" devices, it would render the term "unauthorized access device" under 1029(a)(3) an oxymoron because it would refer to any "functional" device "that is *expired, revoked, canceled*, or obtained with intent to defraud." *See, e.g., Carver*, 916 F.3d at 402-03 ("Expired, revoked, or canceled cards cannot be used to obtain money, and so *Onyesoh* would have three words in its statutory definition that mean nothing.")

While the Third Circuit has yet to issue a precedential opinion discussing the "usability" requirement in Section 1029, in an unpublished opinion, it discussed the definition of "access device fraud" in the context of a defendant who raised a similar "usability" argument after he was sentenced. *United States v. Jones*, 332 F. App'x 801, 807 (3d Cir. 2009). There, the Court of Appeals stated that "the Government was not required to present evidence from banks and other financial institutions that the account numbers . . . *could actually be used* to acquire things of value. The Government simply had to show that the account numbers *were capable* of obtaining things of value." *Id*. (emphasis added). It noted that in the case before it, the "account numbers had the requisite indicia of being capable of use to obtain things of value because they had either been used for that purpose (as evidenced by the receipts and Comcast records) or had been extracted from the magnetic strip on credit cards by skimmers." *Id*.

This Court finds the rationale in the Third Circuit's unpublished opinion persuasive. Here too, the Government presented "the requisite indicia" of the numbers being capable of use to obtain things of value. For example, the Government showed a transcript of a wiretapped conversation between CI2 and Diarra in which CI2 asked Diarra whether to use the card numbers Diarra gave him at Walmart or Target. Diarra responded, "It works in either." Similarly, in

another conversation between Diarra and CI2, Diarra confirms that the fake cards he gave CI2 were functional, saying "you could insert the card [in an ATM] and withdraw as much as you want." Moreover, Agent Crowe testified that after setting up a meeting between CI2 and Diarra during which Diarra gave CI2 various cards, she was able to inspect those cards to find that the magnetic strip numbers were altered to match the numbers on the front of the cards, thereby making them functional for use. Agent Crowe also testified that she found cards containing victim information in the magnetic strips in Diarra's home, suggesting that such cards would be usable. A rational jury, viewing the above evidence as a whole, may have thus reasonably concluded that Diarra was in possession of counterfeit "access devices" within the meaning of the statute.[2]

Diarra also moves for acquittal on the aiding and abetting count under 18 U.S.C. § 2. To prove guilt under this charge, the Government must have shown: (1) that another defendant committed a substantive offense; and (2) the one charged with aiding and abetting knew of the commission of the substantive offense and acted to facilitate it. *United States v. Mercado*, 610 F.3d 841, 846 (3d Cir. 2010). Diarra argues that "no [] evidence" in support of an aiding and abetting theory "exists in this case." However, at trial, the Government presented evidence that met each element of the aiding and abetting statute as to Diarra. First, the jury found—and Doumbia does not dispute—guilt of a substantive offense, which here is counterfeit access device fraud. Second, the Government showed that Diarra knew that Doumbia was committing counterfeit access device fraud. As explained *supra,* Diarra was caught on tape multiple times referring to Doumbia's operations, including his strategic use of credit card numbers to avoid

---

[2] Because the Government presented sufficient evidence that Diarra possessed "access devices," within the meaning of Section 1029, the Court need not reach Diarra's argument concerning whether he can be found guilty by way of "constructive possession" of any devices by Defendants Doumbia or Jallow.

detection from the FBI and the fact that Doumbia's numbers actually worked. Finally, Diarra acted to facilitate Doumbia's fraud by, *inter alia*, sending him a message containing credit card information to Doumbia on August 13, 2018. A reasonable jury could thus find that Diarra aided and abetted the commission of Doumbia's counterfeit access device fraud.

### C. Count III: Possession of Device-Making Equipment, 18 U.S.C. § 1029(a)(4) and 2

Diarra also moves for acquittal on Count III, which is for possession of device making equipment. To prove a violation of 18 U.S.C. § 1029(a)(4), the Government must have shown: (1) that the defendant knowingly and with intent to defraud; (2) "produc[ed], traffic[ked] in, ha[d] custody or control of, or possess[ed]; (3) device making equipment. 18 U.S.C. § 1029(a)(4). "Device making equipment" means "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." 18 U.S.C. § 1029(e)(6).

Diarra contends that the Government failed to prove his possession of device-making equipment because no card re-encoders or embossers were found in his own apartment, as opposed to in Jallow's and Doumbia's apartments. In response, the Government argues that it was not limited—under the terms of the statute—to showing that Diarra "possessed" this equipment in his home, but that it could also show that Diarra "had custody or control of" such equipment, which it reads to encompass as having "control over device-making equipment that was in someone else's hands." *See* L. Sand, *et al*, Modern Federal Jury Instructions – Criminal, Instruction 40-8 (2015). Diarra argues that the Government did not introduce sufficient evidence to support a finding of guilt on this theory.

But at trial, the Government showed that Diarra gave CI2 numerous counterfeit cards with CI2's names printed on them. The Government also showed that Diarra knew that Jallow had a re-encoding machine, and that Doumbia had an embossing machine, and worked with both

individuals previously. The Government presented sufficient evidence from which a reasonable jury could infer that Diarra could not have made the cards without "custody or control" over the equipment of his co-conspirators.[3]

Diarra also argues that he cannot be found guilty of aiding and abetting "for the reasons set forth in Section B" of his brief, *i.e.,* the section discussing the Government's alleged failure to provide the jury with evidence of his aiding and abetting Counterfeit Access Device Fraud. But at trial, the Government did in fact provide the jury with evidence from which it could reasonably conclude that Diarra was guilty of this charge. First, the jury found—and Doumbia does not dispute—guilt of a substantive offense, which here is possession of device-making equipment. Second, the Government showed that Diarra knew that Doumbia possessed device-making equipment: he explained to CI2 during a recorded conversation that Doumbia had a "small device" to make cards with as well as fake credit cards made from stolen numbers. Finally, Diarra acted to facilitate Doumbia's acts by, *inter alia*, sending him a message containing credit card information on August 13, 2018. A reasonable jury could thus find that Diarra aided and abetted the commission of Doumbia's possession of device-making equipment.

**D. Counts IV-VIII: Aggravated Identity Fraud, 18 U.S.C. §§1028(a)(1), (c)(5) and 2**

Diarra and Doumbia both move for acquittal with respect to the five aggravated identity theft counts. To prove a violation of 18 U.S.C. § 1028A, the Government must have shown that:

[3] Setting aside the meaning of "custody or control," Diarra's challenge would also fail under the *Pinkerton* theory pursued by the Government. The Government had alleged that Diarra was a conspirator and thus responsible for any reasonably foreseeable crimes committed by his co-conspirators as long as they were committed during and in furtherance of the conspiracy. *United States v. Ramos*, 147 F.3d 281, 286 (3d Cir. 1998). At a minimum, the evidence clearly shows that Jallow and Doumbia possessed the device-making equipment during the term of the conspiracy, and that that their possession of the same was reasonably foreseeable and done in furtherance of the conspiracy. Thus, Diarra bears responsibility as to this Count as a co-conspirator. *See, e.g., United States v. Herrington*, 719 F. App'x 106, 111 (3d Cir. 2017).

(1) during and in relation to a bank fraud or access device fraud; (2) the defendant transferred, possessed, or used; (3) a means of identification of another person; (4) the defendant acted without legal authority; and, (5) the defendant acted knowingly. 18 U.S.C. § 1028A.

Diarra advances numerous arguments regarding this count, while Doumbia advances one. First, both Defendants argue that the Government did not show that they knew the information "belonged to real people." In support of this argument, Defendants cite the Supreme Court's opinion in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). There, the Court held that the aggravated identity theft statute requires proof the defendant knew the means of identification actually belonged to another person. *Id.* at 646. The Court recognized, however, that "in the classic case of identity theft, intent is generally not difficult to prove." *Id.* at 656. For example, "where a defendant has used another person's identification information to get access to that person's bank account, the Government can prove knowledge with little difficulty." *Id.* Under *Flores-Figueroa*, therefore, the Government's burden of proving knowledge in a case involving fraud "is minimal." *United States v. Norman*, 465 F. App'x 110, 119 (3d Cir. 2012).

In a number of unpublished opinions, the Third Circuit has found that proof of knowledge in identity theft cases may hinge on circumstantial evidence and inferences. For example, in *Herrington*, 719 F. App'x at 110, the Court found that a jury could rely on the inference that "anyone would know that a bank loan would only be granted to a real person with a real social security number." Similarly, the Third Circuit found that a jury could credit the testimony of a former associate in the fraud scheme that "the scam would not work unless the victims were real." *Id.; see also, Norman*, 465 F. App'x at 118-19 ("Because Smith's involvement in the bank fraud scheme would have been pointless if the means of identification did not belong to real customers, the Government's burden was met.")

Here, the Government presented extensive evidence that Defendants wired money and

bitcoin abroad to obtain personal identifying information over the dark web, including dates of birth, social security numbers, credit card numbers, telephone numbers, and employment information. The Government also showed evidence—in the form of wiretapped conversations between CI2 and Diarra, for example—that Defendants were making substantial amounts of money through use of this personal information. *See, e.g.*, Ex. 11 ("this money is better than the mafia"). A jury could reasonably infer that Defendants knew that the information they paid for belonged to real people because Defendants would not have—over the course of seven years—paid for or profited from information that belonged to no one. *See, e.g., United States v. Casellas*, 842 F. App'x 95, 97 (9th Cir. 2021) (finding that a rational juror could have inferred the defendant knew that the victim information was real when the defendant possessed the victim's social security number, address, birthdate, and employment information). The Government thus met its "minimal" burden to established Defendants' knowledge on these counts.

Second, Diarra argues that because Counts Fix, Six and Eight involved Reliance Bank, which is located in Pennsylvania, "there is [] no evidence in this record that" the transactions at issue "affected interstate commerce." This argument is easily disposed of. Reliance Bank engages in interstate commerce, and as shown as trial, some of the stolen credit/debit card transactions occurred out of state. For example, certain transactions occurred in California. The Government therefore showed a sufficient next with interstate commerce. *See, e.g., United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005) ("[C]redit cards generally are issued to applicants by out-of-state financial institutions, and credit-card account numbers travel across state lines, both electronically and by mail. By making purchases and withdrawals with the fraudulently obtained credit cards, Klopf engaged in interstate financial transactions.")

Third, Diarra argues that the Government did not present the jury with sufficient evidence

that he actually used the stolen credit card information. But the Government was not limited to showing actual use of the numbers. Rather, violation of the law includes "knowingly *transfer[ring], possess[ing],* or us[ing], without lawful authority, a means of identification of another person" "during and in relation to" access device fraud. 18 U.S.C. § 1028A (emphasis added). As discussed *supra*, the Government showed evidence of Diarra's possession of personally identifying information, such as victims' social security numbers, credit card numbers, and dates of birth, which he sent by electronic messages to Doumbia. The Government also showed that Diarra had 17 stolen credit card numbers on the computer found in his home. It thus presented evidence at trial from which a jury could reasonably conclude that Diarra was guilty of Section 1208A.[4]

### E. Count IX- Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(a)(2)(B)(i)

Finally, Diarra moves for acquittal on the conspiracy to commit international money laundering count, which required the Government to prove beyond a reasonable doubt a: (1) conspiracy to commit money laundering under 18 U.S.C. § 1956(h); and, (2) international money laundering under 18 U.S.C. § 1956(a)(2)(B)(i). Diarra's challenge only concerns the latter.

To obtain a conviction under 18 U.S.C. § 1956(a)(2)(B)(i), the Government was required to prove that Diarra (1) attempted to transfer funds from the United States to a place abroad, (2) knew that those funds represented the proceeds of some form of unlawful activity, and (3) knew that such transfer was designed to conceal or disguise the nature, location, source, ownership, or

[4] Diarra also argues that "there is no evidence that these [stolen] numbers were in the exclusive possession of defendants Doumbia and Jallow. Bulk numbers purchased on the dark web are likely sold to many criminals and there was no testimony in the record as to exclusivity." But Diarra does not explain or cite to any case law explaining why "exclusive possession" of such information is relevant to sustaining a verdict as to aggravated identity fraud.

control of the funds. *Regalado Cuellar v. United States*, 553 U.S. 550, 561 (2008). According to Diarra, all the Government presented as to the third element is "scant evidence of a few wire transfers in small denominations to Ghana and Russia." In his view, "the wiring of money to an overseas account, without more, cannot support a finding that [he] was acting to conceal the nature, location, source, ownership or control of the money."

Under Section 1956, evidence of a purpose to conceal can come in many forms, including "statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention . . . [and] using third parties to conceal the real owner." *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1475-76 (10th Cir. 1994) (citing cases, including *United States v. Massac*, 867 F.2d 174, 178 (3d Cir. 1989)).

Contrary to Diarra's assertions, the Government did not merely present "scant evidence" of international wires at trial to support its theory of intended concealment. Aside from the wire transfers referred to above, Agent Crowe testified—referring to notes she had taken during her search of Diarra's phone—that Diarra instructed his girlfriend to send wires to individuals in Ukraine and Russia to obtain fraudulent credit card numbers. The jury was able to review Agent Crowe's notes, which contained details about the messages "Mike," *i.e.*, Diarra, would send to his girlfriend regarding who should be marked as the senders and receivers of the wires. Taken together, this evidence demonstrated Diarra's intent to conceal funds, by, *inter alia*: (1) using the alias "Mike," instead of his real name when providing his girlfriend with instructions on how to wire the funds; (2) telling her to use different names for the designated sender of the wires instead of his own; and, (3) having her send the wires instead of himself. The evidence was sufficient to permit a reasonable jury to find that Diarra knew that the wire transactions were designed to conceal the nature of the funds. *See, e.g., United States v. Omoruyi*, 260 F.3d 291, 295-96 (3d Cir. 2001) (holding that evidence established defendant's intent to conceal nature of

proceeds under Section 1956 where he deposited money in bank accounts under false names and used false identification to withdraw it). Diarra's motion for acquittal on this Count will therefore be denied.[5]

An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**

---

[5] Diarra also contends that the Government did not present sufficient evidence for a conviction under Section 1956 (a)(2)(B)(i) in that the evidence did not prove any "connection between any stolen card numbers and the wire transfers," *i.e.*, that the wires were sent for an illegal purpose. But showing transfer of funds for an illegal purpose is not an element of Section (2)(B)(i). As explained *supra*, the elements of a Section (2)(B)(i) violation are: (1) transfer of funds from the United States to a place abroad, (2) knowledge that those funds represented the proceeds of some form of unlawful activity, and (3) knowledge that such transfer was designed to conceal or disguise the nature of the funds. *Cuellar*, 553 U.S. at 561.

At best, Diarra seems to be arguing that the Government did not meet an element of the other Section of the money laundering statute he was convicted of, Section 1956(a)(2)(A). That provision forbids transfers of money to places outside of the United States "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. 1956(a)(2)(A). But even construing Diarra's argument favorably to fit under the correct legal framework, Diarra still fails to meet his "heavy burden" on his motion. At trial, the Government did in fact demonstrate a "connection" between Diarra's wires and the fraudulent credit card numbers he obtained, *i.e.*, that he had the requisite "intent to promote the carrying on of specified unlawful activity." For example, CI2 testified that based on his experience working with Diarra, he knew that Diarra sent wire transfers using Western Union to places like Russia and Ukraine so that Diarra could obtain credit card numbers. Further, Agent Crowe's notes and testimony showed that Diarra instructed his girlfriend to search the web for "dumps" to buy. Agent Crowe explained that "dumps" refer to fraudulently obtained credit card numbers. *Id*. Agent Crowe's notes also showed that Diarra's phone contained an image of a website where he could buy 14 credit card numbers for a cost of $917. A rational jury could thus infer that money was sent "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. 1956(a)(2)(A).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MALAN DOUMBIA, et. al.** | **CRIMINAL ACTION**<br>**NO. 19-392** |

**O R D E R**

**AND NOW**, this 12th day of August 2022, upon consideration of:

1. Defendant Souleymane Diarra's Motion for Acquittal (ECF No. 85), the Government's Response thereto (ECF No. 91), and Defendants' Reply (ECF No. 96); and,

2. Defendant Malan Doumbia's Motion to Set Aside Verdict (ECF No. 84), the Government's Response thereto (ECF No. 90), and Defendants' Reply (ECF No. 96).

**IT IS ORDERED** that said Motions are **DENIED**.

**BY THE COURT:**

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**